BUFFALO GLASS CO. v. ASSETS REALIZATION CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. TRIAL (§ 177*)—VERDICT—MOTION FOR DIRECTION BY BOTH PARTIES.

Where both parties moved for a directed verdict, and neither asked that any issue of fact be submitted to the jury, they conceded that the essential facts were uncontroverted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*]

2. ASSIGNMENTS (§ 108*)—OBLIGATION OF ASSIGNEES—DEBTS DUE SUBCONTRACTORS.

Plaintiff contracted to do certain glazing for the general contractors of a building who thereafter assigned their contract to a bank, informing it of their obligation to plaintiff and other subcontractors. Plaintiff failed to file a mechanic's lien because the contractors agreed to include the amount due them in their own lien and to enforce the same pro tanto for plaintiff's benefit. The bank having failed, its receiver sold the contract, which was worth $7,000 under an order of court to defendant for $1. Defendant in purchasing from the bank knew of the obligation of the contractors and equities in plaintiff's favor. Held, that defendant received sufficient for the payment of the claims of the subcontractors and it was liable to plaintiff for the balance of its claim.

[Ed. Note.—For other cases, see Assignments, Dec. Dig. § 108.*]

Appeal from Trial Term, Erie County.

Action by the Buffalo Glass Company against the Assets Realization Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, defendant appeals. Affirmed.

The action was commenced on the 24th day of July, 1907, to recover the sum of $249.05, with interest, the amount which it is alleged was due and owing to the plaintiff for materials furnished by it in the erection of a certain building in the city of Buffalo owned by the firm or corporation known as C. A. Weed & Co., and which sum it is claimed the defendant became obligated to pay to the plaintiff by reason of facts hereinafter stated.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

James O. Moore, for appellant.
George H. Frost, for respondent.

McLENNAN, P. J. The material facts are not in dispute, and were established principally by documentary evidence. Both parties having moved for a direction of a verdict, and neither having asked that any issue of fact be submitted to the jury, it is practically a concession that none of the essential facts are controverted. In April, 1902, Rumrill & Carter, a firm of building contractors of the city of Buffalo, N. Y., entered into a contract with the firm of C. A. Weed & Co., of the same place, for the building and erection of a store building in said city, at the agreed price of $49,300, subject to additions and deductions, the work to be done under the direction and to the satisfaction of Green & Wicks, architects, and to be paid for upon their certificate and recommendation. In June following Rumrill & Carter entered into a contract with the plaintiff, the Buffalo Glass Company,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to provide all of the glass and glazing for the said building for the sum of $849. About the same time other parties made subcontracts with Rumrill & Carter for the doing of other parts of the work. In fact Rumrill & Carter sublet all the work, except the mason work, which they did themselves. The plaintiff performed its contract and received its pay therefor, excepting the sum of $249.05, to recover which, with interest thereon from June 13, 1903, this action is brought. Shortly after securing the contract of C. A. Weed & Co., and after all the subcontracts were made, including the plaintiff's, the firm of Rumrill & Carter assigned its contract to the German Bank of Buffalo. When such assignment was made, Mr. Rumrill had a talk with Mr. Georger, president of the German Bank of Buffalo, regarding the subcontracts of Rumrill & Carter. He told Mr. Georger of the amount of their contract and explained what the subcontracts were, and said that he would like money advanced from time to time to run the work, and that, as the money was paid to him, it should be turned over to the bank, and asked, in substance, that the bank, the assignee of such contract, pay the bills due on the contract and the amounts due and owing to the subcontractors. On December 10, 1902, Mr. Georger, as president of the German Bank of Buffalo, wrote Messrs. Green & Wicks, the architects, informing them, in substance, that the bank had an assignment of the contract, and stated that it had undertaken to see that all subcontractors would be paid out of the moneys which might become due from said work, and stated that the bank pledged itself to pay all the subcontractors out of the funds just as fast as payments were made to it. The president asked that the payment then due be sent to him. On January 17, 1903, the president of the German Bank acknowledged the receipt from Green & Wicks of a check for $5,000 to apply on the contract of Rumrill & Carter, and stated:

"This check, we understand, is to be applied in part payment of the subcontractors as they are entitled to their proportion of the same."

Another letter, under date of May 1, 1903, was written to Messrs. Green & Wicks, the architects, by the president of the German Bank, in which it was said that:

"I (the president) understand from Rumrill & Carter there is over $8,000 due on their contract, and that they are entitled to their money. Will you kindly inform me if such is the case, and why the money should not be paid at once, as it is very annoying to have these sub-contractors running after us and not to be able to give them a good reason why their money is not forthcoming. Please let me hear from you at once and oblige. * * * "

It is practically conceded that the plaintiff knew that the German Bank was receiving the funds from Weed & Co. upon the Rumrill & Carter contract. The payments by Weed & Co. to Rumrill & Carter were made to the German Bank. The money was deposited in the name of Rumrill & Carter. From time to time the subcontractors were paid out of the German Bank funds. The money so paid to the subcontractors, including the plaintiff, were paid by checks of the firm of Rumrill & Carter. Finally, trouble arose between Rumrill & Carter and C. A. Weed & Co., and resulted in the filing of a lien by Rumrill & Carter upon the building. The plaintiff became concerned about the balance of its bill, and it was finally agreed between it and

Rumrill & Carter that plaintiff need not file a lien; that Rumrill & Carter would file a lien, including therein the amount due plaintiff, which amount should belong to and be paid to plaintiff when the lien was settled, and because of that understanding and agreement with Rumrill & Carter the plaintiff did not file a lien. Matters ran along until June 12, 1903, when the German Bank reassigned to E. Curtis Rumrill, as surviving member of the firm of Rumrill & Carter, the building contract, and then Mr. Rumrill prepared and filed a mechanic's lien for $8,211.40, and subsequently he commenced an action to foreclose such lien as surviving partner. Weed & Co. removed the lien by substituting a bond, and subsequent to the commencement of the action and on June 15, 1903, Rumrill assigned the mechanic's lien, the right of action, and the original contract to the German Bank. That assignment was made on the third day after the bank made the reassignment of the contract to Rumrill as surviving member of the firm of Rumrill & Carter. So that up to this point the German Bank was the equitable owner of the contract entered into between Rumrill & Carter and C. A. Weed & Co. It was also the owner of the lien filed by Rumrill, as surviving partner, and of any right which accrued because of the commencement of the foreclosure of such lien, and under the bond given by C. A. Weed & Co. to relieve the property from such lien. After such reassignment of the rights under the foreclosure action and under the bond given in substitution of the lien, the German Bank failed, and Mr. Albert J. Wheeler was appointed its receiver. At the time of such failure, the bank held the Rumrill & Carter contract and the mechanic's lien of $8,211.40, which passed into the hands of the receiver, Mr. Wheeler. The receiver duly sold or transferred the entire claim to the defendant "subject to all payments, counterclaims, offsets, and equities." The defendant knew of the plaintiff's claim before it paid the receiver for the assets, and before the receiver was authorized to make the transfer. The assignment was made to defendant without recourse to the receiver, and was all of the right, title, and interest of the insolvent German Bank and of the receiver, subject to outstanding interests. The defendant received in settlement of the suit and lien $5,500, and it admits that in May, 1906, it settled said claim, mechanic's lien, bond, and foreclosure suit against Weed & Co., and released and discharged said Weed & Co. from all liability therein. The defendant gave the receiver $1 for said claim, yet it is conceded that it was worth $7,000. It is practically conceded that the defendant knew of the plaintiff's claim and of the claims of the other subcontractors, and of said lien and action at the time it purchased said asset, and that it amounted to about $3,000 or $4,000.

Under these circumstances, it seems to me clear that, the defendant having purchased from the receiver this contract, this lien, and any and all obligations which arose under the bond, and knowing all the conditions and circumstances, is liable for the amount owing to the plaintiff. It seems to me that the plain principles of equity require that the judgment in this case should be affirmed.

The defendant purchased from the receiver of the German Bank the contract between Rumrill & Carter and C. A. Weed & Co. It

purchased also all right, title, and interest acquired by the lien filed by Rumrill as surviving partner and in and to the bond which was given by C. A. Weed & Co. to relieve its property from the incumbrance of such lien. The defendant knew all the conditions and circumstances attending the transfer of such lien and the rights acquired under the action of foreclosure and under the bond, and it is apparent that one of the conditions which were understood by the defendant was that it took such asset or claim subject to the lien or claim of the plaintiff and the other subcontractors. The evidence very conclusively shows that the defendant received as a result of the work done by the firm of Rumrill & Carter or by Rumrill as surviving partner the sum of $5,500, and that it was understood by all parties that such sum should be distributed to pay the claims of the subcontractors. This the defendant refused to do, and this action was brought. There is no new or novel proposition of law involved in this case. The plaintiff contracted to do certain work for Rumrill & Carter in the carrying out of their contract with C. A. Weed & Co. Rumrill & Carter assigned such contract to the German Bank, informing it of its obligation to the plaintiff and the other subcontractors. The German Bank having failed, its receiver sold such contract and all the rights and obligations which accrued thereby, under order of the court, to the defendant. It purchased the same fully knowing the obligation which it assumed in favor of the subcontractors by reason of the assignment of Rumrill & Carter to the bank. It purchased those assets for a nominal consideration, and now refuses to pay the obligation which it assumed or which came to it by reason of such purchase. I think it clear that, when the defendant purchased from the receiver of the German Bank the claims and obligations involved in the contract between Rumrill & Carter and C. A. Weed & Co., it became obligated to devote whatever it might receive under such contract to the payment of the claims of the subcontractors, and, it having received from Weed & Co. sufficient for that purpose, this plaintiff, as a subcontractor, is entitled to receive the balance of its claim.

None of the exceptions which are called to our attention by appellant constitute reversible error. As before said, the facts are undisputed. By the uncontradicted evidence the defendant obtained money from C. A. Weed & Co. for which it paid no other consideration than $1, and which, as I think, ought to be applied, under the circumstances, in payment of the claims of plaintiff and the other subcontractors of Rumrill & Carter, the amount so received by the defendant being amply sufficient for that purpose.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs.